## Case No. 1,406.

### BILL v. BECKWITH et al.

### In re NEAL.

[2 N. B. R. (1868.) 241, (Quarto, 82;) 1 Chi. Leg. News, 103.] [1]

Circuit Court, N. D. Ohio.

BANKRUPTCY—FRAUDULENT TRANSFERS—SUMMARY PROCEEDING TO RECOVER PROPERTY—ISSUES OF FACT—TRIAL BY JURY.

1. Property fraudulently disposed of by a bankrupt in proceedings by or against him may be recovered by the assignee upon petition in the bankruptcy court, proceedings upon which may be of a summary character.

2. The district judge may order issues of fact arising in such cases to be tried by a jury.

3. Suits may be brought at common law, or by bill in equity, for the recovery of property in such cases, but as they must be governed by the technical rules, and be subject to the delays incident thereto, it is preferable to proceed by summary proceedings in the court of bankruptcy, that being a cheaper, speedier, and more simple mode.

[Cited in Foster v. Ames, Case No. 4,965; Norris' Case. Id. 10,304; Markson v. Heaney. Id. 9,098; Goodenow v. Milliken, Id. 5,535; Re Dole, 3,965; Hudson v. Schwab, Id. 6,835. Contra: Barstow v. Peckham, Id. 1,064; In re Marter, Id. 9,143.]

[Appeal from the district court of the United States for the northern district of Ohio.

[In bankruptcy. Petition by H. N. Bill, as assignee of John C. Neal, against Seth R. Beckwith, Charles P. Vaupel, and James P. Moore for the recovery of property fraudulently transferred by the assignor. The petition was dismissed, and the assignee now petitions for review. The order was reversed.]

Willey & Carey, for assignee.

Hon. James Mason and Wyman & Barlow, for respondents.

SWAYNE, Circuit Justice. On the 22d of January, 1868, as is alleged, John C. Neal, being insolvent, and in contemplation of bankruptcy, did, with the intent to defraud his creditors, transfer a certain stock of goods, consisting of drugs, chemicals, &c., belonging to him, to Seth R. Beckwith. He, the said Beckwith, knowing the design of said Neal, and being also aware of his insolvency, connived with the said Neal, and obtained possession of said property. Shortly afterwards, Beckwith sold, or pretended to sell, said property to Chas. P. Vaupel and James P. Moore, who, at the time had full knowledge of the facts before stated, and took possession of said property under those circumstances.

The assignee of Neal filed his petition against the said Beckwith, Vaupel, and

[1] [Reprinted from 2 N. B. R. 241, (Quarto, 82,) by permission. 1 Chi. Leg. News, 103, only contains the syllabus.]

Moore, setting forth the facts of the fraudulent transfer and pretended sale, praying for an order that they show cause why they should not be required to deliver over said property to him, and pay him the proceeds of any part of the property they had sold. Thereupon Beckwith, Vaupel, and Moore moved the district court to dismiss the petition on the ground of its being irregular "and without authority of law." Upon argument the court below sustained the motion, and dismissed the petition with costs.

A petition for review was then filed by the assignee, praying this court to review and reverse the decision of the district court. The position of the defendants is, that while the district court has full jurisdiction to proceed with an action at law or in equity, such jurisdiction can be exercised only in one of these ways. The question is a statutory one, and must be decided according to the provisions of the statute which bears upon the subject. The first section of the bankrupt law [14 Stat. 517] provides as follows: "That the several district courts of the United States be and they hereby are constituted courts of bankruptcy, and they shall have original jurisdiction in their respective districts in all matters and proceedings in bankruptcy, and they are hereby authorized to hear and adjudicate upon the same according to the provisions of this act. The said court shall be always open for the transaction of business under this act, and the powers and jurisdiction hereby granted and conferred shall be exercised as well in vacation as in term time; and a judge sitting in chambers shall have the same powers and jurisdiction, including the power of keeping order and punishing any contempt of his authority, as when sitting in court. And the jurisdiction hereby conferred shall extend to all cases, and controversies, arising between the bankrupt and any creditor or creditors who shall claim any debt or demand under the bankruptcy; to the collection of all the assets of the bankrupt; to the ascertainment and liquidation of the liens, and other specific claims, thereon; to the adjustment of the priorities and conflicting interests of all parties; and to the marshalling and disposition of the different funds and assets, so as to secure the rights of all parties, and due distribution of assets among all the creditors; and to all acts, matters, and things to be done under and in virtue of, the bankruptcy, until the final disposition and settlement of the estate of the bankrupt, and the close of the proceedings in bankruptcy. The said courts shall have full authority to compel obedience to all orders and decrees passed by them in bankruptcy, by process of contempt and other remedial process, to the same extent that the circuit courts now have in any suit pending therein in equity." "Said courts may sit for the transaction of business in bankruptcy at any place in the district, of which place, and the time of holding court, they shall have given notice, as

well as at the places designated by law for holding such courts."

Now, it is very clear, from the language of that section, that the fullest and most comprehensive authority is given to the district court and to the district judge in respect to all matters relating to a proceeding in bankruptcy. There is a special provision—special authority is given in regard to the collection of the assets of the assignor by the assignee. The act provides that his jurisdiction and authority may be exercised at the place appointed for holding court in the district, or by the district judge at chambers. As to a large portion of the jurisdiction thus conferred by the section, it was clearly intended it should be exercised in the most summary and informal manner by the district judge at chambers as well as in term. It will have been observed that express authority is given to exercise the jurisdiction thus conferred in court and at chambers, and there is no disagreement between the exercising of the jurisdiction thus conferred upon any one subject or class of subjects and any other subject or class of subjects. The context is entirely harmonious with this view of the subject, and the same authority is given to the district judge to exercise his jurisdiction under the act at chambers, as at term, or when the court is regularly held.

Now, it seems to me very clear that a suit in equity, or an action at law of any kind, could not have been intended to be conducted by the judge in vacation and sitting at chambers. It is true that at the outset the act uses the language "jurisdiction is hereby conferred," and if that is true, the implication would be irresistible that the jurisdiction thus given was intended to be exercised in the ordinary way. The conclusion is irresistible in my mind, that while there can be no doubt that an action at law, in a proper case, may be sustained by the district court in a certain class of cases, that is, when the regular term is held; yet it is equally competent for a district judge in vacation at chambers to conduct a summary proceeding not in either of these formal modes.

I will further remark, under this head, that the mode of procedure in this summary way which the judge is authorized to institute and conduct is in no wise different from that intended by the act of congress. The object and policy of the bankrupt law undoubtedly was that the proceedings under it should be summary; that matters should be settled as speedily as possible, and that the proceedings might be cheapened, they being greatly so by this summary and informal mode of proceeding. And it is also the policy of the law that, except in a regular action at law or suit in equity, this court has a general, and I may say universal jurisdiction in the way of superintending such matters.

By the second section of the bankrupt act it is provided that the circuit court, "shall have a general superintendence and jurisdiction in all cases and questions arising under this act," and therefore may be as informal and direct as a proceeding of this same general character, which the district judge, in vacation, sitting at chambers, is authorized to conduct. As I have had occasion more than once to remark, the second section of the bankrupt act, which confers the authority to which I have referred, upon the circuit judge in the circuit court, is copied verbatim from the insolvent law of Massachusetts, and, of course, the adjudications of the legal tribunals of that state throw some light upon the subject. I have had occasion heretofore to examine very carefully the adjudications of that state touching this subject, and find the supreme court of that state sometimes exercises supervisory authority upon the statement of counsel; sometimes upon the admissions of parties; sometimes upon complaint and answer.

The whole mode of procedure, while it is of this summary character, is subject to the authority, to be exercised in such manner as shall be thought proper, they of course always being careful while the proceedings are made summary, not to permit them to be so summary that wrong or injustice is done to either party. Some further light is thrown on this subject by subsequent provisions of the statute. The fifteenth section provides generally "that the assignee shall demand and receive from any and all persons holding the same, all the estate to be assigned or intended to be assigned under the provisions of this act, and he shall also sell all such unincumbered estate, real and personal, which comes to his hands, on such terms as he thinks most for the interest of the creditors. But upon petition of any person interested, and for cause shown, the court may make such order concerning the time, place, and manner of sale, as will in its opinion prove to the interest of the creditors, and the assignee shall keep a regular account of all money received by him as assignee, to which every creditor shall, at reasonable times, have free resort." Then the twenty-fifth section provides as follows:

"That when it appears to the satisfaction of the court that the estate of the debtor, or any part thereof, is of a perishable nature, or liable to deteriorate in value, the court may order the same to be sold in such manner as may be deemed most expedient, under the direction of the messenger or assignee, as the case may be, who shall hold the funds received in place of the estate disposed of. And whenever it appears to the satisfaction of the court that the title to any portion of an estate, real or personal, which has come into the possession of the assignee, or which is claimed by him, is in dispute, the court may, upon the petition of the assignee, and after such notice to the claimant, his agent, or attorney, as the court shall deem reasonable, order it to be sold, under the direction of the assignee, who shall hold the funds re-

ceived in place of the estate disposed of. And the proceeds of the sale shall be considered the measure of the value of the property in any suit or controversy between the parties in any courts. But this provision shall not prevent the recovery of the property from the possession of the assignee by any proper action commenced at any time before the court orders the sale."

It will be observed without any further search, that this section makes provision for two classes of cases in respect to disputed estates: First, as to the property in possession of the assignee. In regard to that case, it is provided that the court may, when it shall deem proper, order a sale; and in any action in relation to the subject, the proceeds of the sale shall be held to constitute the measure of damages which shall be recovered. Second, as to the property claimed by the assignee. The same provision is made upon this subject; that is, that the court may order a sale of the property not in possession of the assignee, and the funds realized by the sale shall constitute the measure of damages in an action at law. Now this implies very clearly that the court may exercise such control as it deems proper in regard to property which is in controversy, and which property is not in the possession of the assignee. Of course it must be reduced to possession. But where a sale has been made, and the proceeds realized by that sale are in controversy, I cannot doubt, in the light of this provision on that subject, that it was the intention of congress, that in all cases of that character the court may order estates, not in possession of the assignee, if it deems proper to take that course, to be delivered over to the assignee, in order that it may be sold and the proceeds held subject to the rights of the party who may prove himself entitled to it under the bankruptcy.

The last provision of this section throws strong light on the policy of the legislature on this subject: "But this provision shall not prevent the recovery of the property from the possession of the assignee by any proper action, commenced any time before the court orders the sale." That is to say, from the obvious meaning and spirit and purpose of the context of these several sections, that any property not in possession of the assignee may by the court be ordered into possession of the assignee. Under the new Code which is to govern us, if the court orders it, the party may recover the property from the assignee by giving bonds with sufficient security, and it is then of but little importance to the creditors how long the litigation may be delayed, provided this property may be kept secured and safe as it is intended by law, if the assignee should maintain his claims. If the claims of the assignee should fail, then the property is in the right hands, and the creditors are in no way affected. But let us look for a moment from this stand-point, and see what follows from

this construction. It is contended by the counsel for the respondents in this case, that where a bankrupt, on the eve of bankruptcy, makes a fraudulent sale, and delivers over an estate, the assignee cannot proceeed in this summary way, but can only bring an action of fraud. Very well, then there must be delay until the trial; then there may be longer delay, if sufficient cause be shown; and if the fraudulent vendee of the property shall find that the action is likely to result in recovery against him, after the lapse of any length of time, during which time he might have been able to postpone a final determination of the case, his property is out of his hands, and the assignee is just where he was at the commencement, and he is obliged to commence anew.

It seems to me to be very clear that that is not the intention of the statute, and that it is in direct conflict with the obvious purposes and design of the law-makers in framing this provision upon the subject. I will remark more conclusively than I have done, that from the language as used, "that the district judge may exercise this summary jurisdiction as in equity," it is very clear to my mind that if, in conducting such a proceeding, the district judge shall be satisfied that justice will be subserved by a jury trial, he can direct the issue to be so tried, and the parties can have as full and deliberate a trial as if the assignee had proceeded at law.

It may be proper to remark, in this connection, that in this class of cases, in most instances, a party can resort to an action at law to recover the property of which a fraudulent sale has been made. If he does, the amount to be recovered is the value of the property; and the rule of law is, no matter what the object of the vendee is, no matter whether he has bought it of the vendor, having done all in his power to repair the wrong he had done, or blot out the fraud he had committed; yet, if there were fraudulent transactions, and the sales were void, the court, in an action against him, can go no further than in an action at law. As I remarked, the measure of damages in a proceeding by petition shall be the value of the proceeds of the sale of the property.

In an equity proceeding, if the property has been honestly applied to the debts of the fraudulent vendor, it may be credited in the creditor's bill. The great principle in equity cases is, that the fraudulent vendee shall derive no profit or benefit for himself. In this connection I will add, what I have already said, that in my judgment the district judge may proceed just as he may think proper, being bound only by the right administration of justice between the parties. This summary procedure is not a new matter in bankrupt legislation in this country by any means.

Under the bankrupt law of 1841, the rule of the supreme court, in construing the act with reference to adjusted claims, was, that the district court has jurisdiction of a bill

in equity, and also jurisdiction to proceed as in this case. In Ex parte Christy, 3 How. [44 U. S.] 292, Justice Story uses the following language: "But it is objected that the jurisdiction of the district court is summary in equity and without appeal to any higher court. This we readily admit. But this was a matter for the consideration of congress in framing the act. Congress possesses the sole right to say what shall be the forms of proceedings, either in equity or at law, in the courts of the United States, and in what cases an appeal shall be allowed or not. It is a matter of sound discretion, and to be exercised by congress in such a manner as shall in their judgment best promote the public convenience, and the true interests of the citizens. Because the proceedings are to be in the nature of summary proceedings in equity, it by no means follows that they are not entirely consistent with the principles of justice, and adapted to promote the interest as well as the convenience of all suitors. Because there is no appeal given, it by no means follows that the jurisdiction is either oppressive or dangerous. No appeal lies from the judgments either of the district or of the circuit court in criminal cases; and yet, within the cognizance of one or both of these courts, are all crimes and offences against the United States, from those which are capital down to the lowest misdemeanors, affecting the liberty and the property of the citizens. And yet there can be no doubt that this denial of appellate jurisdiction is founded on a wise protective policy. The same reasoning would apply to appellate jurisdiction from the decrees and judgments of the circuit court, which are limited to cases above two thousand dollars, and cases below that sum embrace a large proportion of the business of that court."

The truth is, (as has been already asserted,) that in no other way could the bankrupt system be put into operation without interminable doubts, controversies, embarrassments, and difficulties, or in such a manner as to achieve the true end and design thereof. Its success was dependent upon the national machinery being made adequate to all the exigencies of the act. Prompt and ready action, without heavy charges or expenses, could be safely relied on where the whole jurisdiction was confided to a single court, in the collection of assets, in the ascertainment and liquidation of liens and other specific claims thereon; in adjusting the various priorities and conflicting interests; in marshalling the different funds and assets; in directing the sales at such times and in such a manner as should best subserve the interest of all concerned; in preventing, by injunction or otherwise, any particular creditor or person having an adverse interest from obtaining an unjust and inequitable preference over the general creditors, by an improper use of his rights or his remedies in the state tribunals; and finally, in making a due distribution of the assets, and bringing to a close, within a reasonable time, the whole proceedings in bankruptcy. The remarks of that learned judge are so strikingly applicable here that I can entertain no doubt in this case, and the order of the district court, dismissing the petition of the assignee, is reversed with costs.